

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

May 9, 1958

Mr. Henry Wade,
District Attorney,
Dallas 2, Texas

Opinion No. WW-430.

Re: Authority of Commissioners'
Court to enter order on
recommendation of auditor
for method of paying food
vendors for food supplies
furnished indigent citizens,
and authority of county
treasurer to refuse to ap-

Dear Sir:

prove warrants issued therefor.

You have submitted for our consideration certain questions concerning the following proposed procedure for processing food orders issued by the City-County Welfare Department of Dallas County. Payment of these orders is made by the Commissioners' Court and your questions concern the accounting procedures involved in this proposed method of payment.

The following is a statement of the transactions which take place in this procedure:

Food orders for indigent persons under the jurisdiction of the Welfare Department are prepared in triplicate from case records on file at the City-County Department of Public Welfare. A voucher payable to the City-County Welfare Department is then prepared for the total amount of food orders written for a particular period. This voucher, supported by the duplicate copies of the orders written, is then sent to the County Auditor's Office for pre-auditing. Upon completion of pre-audit procedure by the County Auditor's office, the voucher is put upon the appropriate court minutes and sent to the Commissioners' Court for approval.

After approval by the Commissioners' Court a General Fund warrant in payment of the voucher is prepared by the County Clerk. The warrant is then returned to the County Auditor, where it is checked for correctness of payee. After this audit, the warrant is signed by the County Auditor and is forwarded to the County Clerk for his signature. After the signature of the County Clerk, the warrant then goes to the County Treasurer for his signature and registration.

The completed warrant is then sent by the County Treasurer to the City-County Welfare Department where it is deposited by that office in a bank account established in the Mercantile National Bank, for the payment of food orders. It is only after this warrant has been deposited that the original food orders are mailed out to the welfare recipients. These recipients then take the orders to food suppliers of their choice, who fill the orders to the stipulated value of the order after the recipient has placed his signature on the face of the order. The food supplier then places his name and address on the face of the order. After this is done the food order becomes a draft payable at the Mercantile National Bank out of the account established by the deposit of the General Fund warrant issued by the Commissioners' Court.

The only further action taken in the payment of these claims is by the Welfare Department and Dallas County in reconciling the bank account through which the food order drafts have been cleared. Of course, the County Auditor post-audits the records of the City-County Welfare Department each year.

On December 30, 1957, the Commissioners' Court of Dallas County duly enacted an order which would authorize the above procedure. Subsequently, the County Treasurer of Dallas County refused to register and approve the warrant drawn by the County Clerk payable to the City-County Department of Public Welfare. This refusal was on the basis that the procedure did not comply with Articles 1627 and 1710, Vernon's Civil Statutes, and for the further reason that it would delegate the duties and responsibilities of the County Treasurer to the City-County Department of Public Welfare. The Treasurer in his statement of refusal to the Commissioners' Court requested that the order of December 30, 1957 be revoked until the legality of the proposed procedure could be determined.

The questions you present for our consideration are:

"1.  Is the proposed method of paying food vendors for food supplies furnished indigent citizens of Dallas County, Texas, legal?

"2.  In the event the answer to Question No. 1 is in the affirmative, can the County Auditor, by mandamus action, compel the County Treasurer to approve and register Warrant No. 12,923 payable to the City-County Department of Public Welfare?"

The general duties of the County Treasurer with regard to the payment, registration and approval of warrants are set out in the following statutes.

Article 2554, Vernon's Civil Statutes, provides in part as follows:

"It shall be the duty of the county treasurer upon the presentation to him of any warrant, check, voucher, or order drawn by the proper authority, if there be funds sufficient for the payment thereof on deposit in the account against which such warrant is drawn, to endorse upon the face of such instrument his order to pay the same to the payee named therein and to charge the same on his books to the fund upon which it is drawn. . . . All checks or warrants issued or drawn by any officer under the provisions of this Act, shall be subject to all the laws and regulations providing for auditing and countersigning and all such laws and regulations are hereby continued in full force and effect."

Article 1627, V. C. S., provides:

"Said treasurer shall enter each claim in the register, stating the class to which it belongs, the name of the payee, the amount, the date of the claim, the date of registration, the number of such claim, by what authority issued, and for what service the same was issued, and shall write on the face of the claim its registration number, the word, 'registered,' the date of such registration, and shall sign his name officially thereto."

Article 1709, V.C.S., provides:

"The county treasurer shall receive all moneys belonging to the county from whatever source they may be derived, and pay and apply the same as required by law, in such manner as the commissioners court of his county may require and direct."

Article 1710, V.C.S., provides:

"The county treasurer shall keep a true account of the receipts and expenditures of all moneys which shall come into his hands by virtue of his office, and of the debts due to and from his county; and direct prosecutions according to law for the recovery of all debts that may be due his county, and superintend the collection thereof."

Mr. Henry Wade, page 4 (WW-430).

Article 1713, V.C.S., provides:

"The county treasurer shall not pay any money out of the county treasury except in pursuance of a certificate or warrant from some officer authorized by law to issue the same; and, if such treasurer shall have any doubt of the legality or propriety of any order, decree, certificate or warrant presented to him for payment, he shall not pay the same, but shall make report thereof to the commissioners court for their consideration and direction."

It is under the terms of Article 1713, *supra*, that the County Treasurer of Dallas County has refused to register and approve the warrant in question.

Under the provisions of Article 2351, Vernon's Civil Statutes, the Commissioners' Court of Dallas County has the power and duty to support and provide for paupers who are residents of their county and who are unable to support themselves. As a general rule of law, the Commissioners' Court rather than the Treasurer of the County is the guardian of the County Funds. Hurley v. Buchanan, 233 S.W. 590 (Tex. Civ. App. 1921, error dism.). As such guardian it has a great latitude of discretion in the management of the county finances to effectuate its granted powers. As was stated in the case of Davis v. Burney, 58 Tex. 364 (1883):

"From the very nature of the case the commissioners court must have considerable discretion in its management of county finance as to when and how the county indebtedness is to be paid and in providing the means for payment. In such matters it would be impracticable for the legislature to descend into the particulars, and undertake to confer express powers upon the court in the management of such a complicated matter in every minute detail. All that was intended by or could have been expected of the legislature in this regard, would be to confer upon the court such general powers by express legislation, as, when supplemented by such as will be necessarily implied, will attain the purposes of county government, and secure its efficient and economical administration."

As we have stated, the County Auditor of Dallas County has suggested this accounting and disbursement system. We are of the opinion that the above quoted authorities imply that the Commissioners' Court shall have the power to make disbursements in a manner designed to effectively carry out its specific powers. The method of disbursement described in your opinion request seems to be an efficient, economical, and well controlled method of disbursing the many small welfare checks which Dallas County is required to handle. Further, we are unable to see that this accounting and disbursing procedure infringes upon any of the duties or responsibilities of the County Treasurer of Dallas County.

We think it clear that it is the County Treasurer's duty to pay and apply the funds of the County as required by law in the manner and by the method directed and required by the Commissioners' Court of the County. Article 1709, V. C. S., supra. However, the treasurer does have some discretion as to the payment of the warrants submitted by the Commissioners' Court. If he has doubts as to the validity or legality of the warrants, he is not to pay the same, but is to report his objection to the Commissioners' Court in accordance with Article 1713, Vernon's Civil Statutes. The Treasurer's liability in this situation is clearly set out in the case of McDonald v. Farmer, 56 S.W. 555 (Tex. Civ. App., 1900), wherein the Court stated:

"When the treasurer has no reason to doubt the legality or the propriety of a warrant presented to him for payment, it is his duty to pay it; and, having paid it in the discharge of his duty, he ought not to be held liable to the fund out of which it has been paid. He must, however, act in good faith, and exercise care and prudence to make no payment for which the County or School District should not be held liable. . . . Whether or not he should be protected in the payment would be a fact to be determined by his care and good faith. He should take care to see that the warrant had been drawn by the proper authority, and in accordance with law. He cannot have credit for a warrant issued for an illegal claim, if he has reason to believe that the demand for which it was issued was in fact illegal."

Having concluded, therefore, that the general control and management of county finances rests in the Commissioners' Court, and having further concluded that the accounting procedure above described does not amount to a delegation of the functions of the County Treasurer under Articles 1710 and 1627,

Vernon's Civil Statutes, it is our opinion and you are so advised that the above described system of disbursement of the funds of Dallas County is valid and in conformity with the statutes of the State of Texas.

In view of our answer to your first question, we presume that the County Treasurer of Dallas County will carry out his functions as County Treasurer in processing and paying the warrant issued by the County Clerk to begin this disbursing procedure. Accordingly, we deem it unnecessary to answer your second question concerning whether mandamus would lie against the Treasurer to require his approval of the warrants issued by the County Clerk.

## SUMMARY

The stated proposed system of making disbursements by the Commissioners' Court of Dallas County of welfare payments through an impressed bank account is a valid means of payment of such obligations of the county.

Yours very truly,

WILL WILSON
Attorney General of Texas

By
John H. Minton, Jr.
Assistant

JHM:wb:pf
APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman

Jack Goodman
J. Mark McLaughlin
J. Arthur Sandlin
REVIEWED FOR THE ATTORNEY GENERAL
By: W. V. Geppert.